```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND

                                 :
SHIELD OUR CONSTITUTIONAL
 RIGHTS AND JUSTICE, et al.      :

     v.                          :    Civil Action No. DKC 2009-0152

                                 :
ADAM MAURICE TIPPETT
                                 :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action are: (1) a motion for leave of court to amend (Paper 9) filed by Plaintiffs Shield our Constitutional Rights and Justice ("Shield") and Qihui Huang; and (2) a motion to dismiss amended complaint (Paper 8) filed by Defendant Adam Tippett. The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion will be granted and Plaintiffs' motion will be denied.[1]

**I.  Background**

This action arises from Plaintiff Qihui Huang's purchase of a residential property from homebuilder Centex Homes. Plaintiffs in this action are Ms. Huang, the home purchaser, and Shield, "a non-profit organization, formed and registered in Washington, District of Columbia, with hundreds of members national [sic]

---

[1] Plaintiffs recently filed a motion for partial summary judgment and a jury trial (Paper 17), which will be denied as moot.

wide." (Paper 1 ¶ 7). Defendant Tippett is the former field manager for Centex Homes.

In or about 2004, Ms. Huang contracted to buy a house at 150 Riverwatch Drive in Indian Head, Maryland (the "Town"). As the purchaser, Ms. Huang put down a deposit and contracted to close on the property after a Use and Occupancy ("U&O") certificate was issued from the Town. Centex was required to obtain a U&O certificate prior to transferring the property to Ms. Huang. On November 8, 2004, when construction on the property had been substantially completed, Planchek, Inc., the independent inspector hired by the Town, certified the property as ready for a U&O certificate. The Town granted a U&O certificate to Centex on November 9, 2004. Centex notified Ms. Huang that a U&O certificate had issued and that she was contractually obligated to go to settlement or forfeit her deposit. Ms. Huang attended settlement and closed on the property on November 24, 2004.

In December 2004, Planchek informed the Town that Centex construction equipment had caused some damage to the side yard of Ms. Huang's property. Centex offered to fix the damage to the yard. However, when Centex attempted to sod Ms. Huang's yard, she refused to allow them onto the property to repair the damage to the landscaping. Instead, Ms. Huang sought help from the Town, claiming that Centex forced her to settle on the property, even though the property had incomplete grading and landscaping, and had

cliffs and ditches on the side yard.  The Town inquired of Planchek as to whether the U&O certificate had been approved in error.  Richard Wilcher, the inspector employed by Planchek, informed the Town that at the time he conducted the inspection, the condition of the property was sufficient to permit the authorization of a U&O certificate.  The Town manager informed Ms. Huang that the certificate was properly issued.

    The Town informed Ms. Huang by letter dated December 15, 2004 that if she did not allow Centex to enter the property to complete the work, she would assume responsibility for fixing the damage. The Town sent Ms. Huang a second letter on February 1, 2005 reiterating that if she did not allow Centex on the property to make repairs, she would assume responsibility for repairing the damage.

    Instead of allowing Centex to fix the damage or having it fixed herself, Ms. Huang filed a flurry of lawsuits in both state and federal court against Centex and its individual employees, the Town and its mayor, her lender and its appraiser, and Planchek and its individual employees.  The case against Planchek, which was filed in the Circuit Court for Charles County, was tried before a jury on April 16 and 17, 2008.  Defendant testified during the trial.  The jury returned a verdict in favor of the defendants. Ms. Huang filed an appeal of the judgment to the Court of Special Appeals of Maryland.

Plaintiffs filed a complaint against Defendant in this court on January 23, 2009.  (Paper 1).  Plaintiffs filed a motion for leave to file an amended complaint on February 17, 2009.  (Paper 4).  The court informed Plaintiffs that leave to file an amended complaint was unnecessary under Fed.R.Civ.P. 15(a)(1)(A) because Defendant had not filed a responsive pleading.  (Paper 5). Plaintiffs filed an amended complaint on February 20, 2009. (Paper 6).  Plaintiffs' nine count amended complaint alleges that Mr. Tippett: (1) "defrauded"; (2) "misrepresented"; (3) "neglected"; (4) "slandered and defamed"; (5) committed conspiracy; (6) violated 42 U.S.C. §§ 1981, 1982, 1983, 1985, and 1988; (7) violated the Maryland Consumer Protection Act ("MCPA"); (8) breached the contract; and (9) violated the Fair Housing Act of 1968 ("FHA"), 42 U.S.C. §§ 3601, 3602, 3603, 3604, and 3605.  (Paper 6).  Defendant filed a motion to dismiss for failure to state a claim. (Paper 8). Thereafter, Plaintiffs filed another motion to amend the complaint. (Paper 9).

**II. Motion to File Second Amended Complaint**

Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Refusal of such leave, without a justifying reason, is an abuse of discretion and is "inconsistent with the spirit of the Federal Rules."  *Foman v. Davis*, 371 U.S. 178, 182

4

(1962).  Denial of leave to amend should occur "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."  *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986).  Rule 15, thus, reflects "the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities."  *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)(*en banc*).  Determinations of futility under Rule 15(a) are governed by the standard for motions to dismiss.  *Classen Immunotherapies, Inc. v. King Pharms., Inc.*, 403 F.Supp.2d 451, 459 (D.Md. 2005).

Although Plaintiffs style their motion as a "Motion for Leave of Court to Amend," the motion is essentially a motion for leave to file a second amended complaint.  Plaintiffs provide no basis for allowing them to file a second amended complaint.  Defendant opposes the motion to amend, arguing that not only are the proposed changes immaterial, but they fail to cure defects fatal to the amended complaint and the original complaint.  Defendant further argues that Plaintiffs' motion is an improper attempt to avoid a decision on the merits.  Indeed, allowing Plaintiffs to file a second amended complaint at this juncture would be prejudicial to Defendant.  Defendant has already filed two motions to dismiss in the action: one for Plaintiffs' original complaint and a second for Plaintiffs' amended complaint.  Furthermore, Plaintiffs' second

5

amended complaint would be futile. The proposed changes are nothing more than re-labeled headings and additional conclusory recitations of claims. Accordingly, the motion for leave to amend will be denied.

**III. Motion to Dismiss**

    **A.   Standard of Review**

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(internal citations omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the

6

light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999)(citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Finally, while courts generally should hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," they may nonetheless dismiss complaints that lack a cognizable legal theory or that fail to allege sufficient facts under a cognizable legal theory. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Turner v. Kight*, 192 F.Supp.2d 391, 398 (D.Md. 2002), *aff'd*, 121 Fed.Appx. 9 (4th Cir. 2005)(unpublished).

**B.    Analysis**

**1.    Standing**

To assert standing under Article III, a plaintiff must show (1) actual or threatened injury that is both concrete and particularized, and not conjectural or hypothetical; (2) injury fairly traceable to the defendant's challenged action; and (3) injury likely redressable by a favorable court decision. *Burke v. City of Charleston*, 139 F.3d 401, 405 (4th Cir. 1998)(citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Defendant argues that Shield does not have standing to bring any claims in this action.

An organization such as Shield may show standing to bring a suit under two theories: standing in its own right or representational standing, based on the fact that members it represents have been harmed. *Md. Highways Contractors Ass'n., Inc. v. State of Maryland*, 933 F.2d 1246, 1250 (4th Cir. 1991)(citations omitted). It is unclear whether Plaintiffs assert that Shield has standing in its own right or representational standing.

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), is the seminal case regarding organizational standing, at least under the FHA. In that case, the Court stated:

> If, as broadly alleged, petitioners' steering practices have perceptibly impaired HOME's ability to provide counseling and referral services for low- and moderate-income home-seekers, there can be no question that the

8

> organization has suffered injury in fact. Such concrete and demonstrable injury to the organization's activities –- with the consequent drain on the organization's resources -– constitutes far more than simply a setback to the organization's abstract social interests . . . .

*Id.* at 379.

Plaintiffs allege that Shield is an organization that "help[s] and support[s] victims of others' unlawful actions." (Paper 6, ¶ 7). Plaintiffs further allege that Shield "through its staff, their times [sic], efforts, and costs, seeks to help victims seeking rights protected by Constitutions and Statutes." (*Id.* ¶ 23). Although unclear, Plaintiffs appear to allege that Shield suffered injury as a result of having to divert its resources from other programs in order to assist Ms. Huang. However, Plaintiffs fail to allege any specific facts to substantiate this bald allegation.

In *Equal Rights Ctr. v. Equity Residential*, 483 F.Supp.2d 482 (D.Md. 2007), the Equal Rights Center ("ERC"), a non-profit organization, sued the owner of apartment buildings alleging a nationwide practice of violating the FHA. The court held that ERC's allegations were sufficient to establish organizational standing. The court explained:

> [P]laintiff has amply alleged facts showing a causal connection between plaintiffs injury and defendants' conduct. Taking the allegations of the complaint as true, defendants own and/or operate 300 properties which, in one or more ways, limit access to

9

> persons with disabilities and thus violate federal law. Specifically, through its investigation over a period of two years, plaintiff has found 'design and construct' violations in 61 of defendants' properties. Moreover, because, as plaintiff alleges, the tested properties share various combinations of common design elements with the untested properties, plaintiff may permissibly and reasonably allege on 'information and belief' the existence of violations at each of the properties named in the complaint. Plainly, plaintiffs allege facts that demonstrate that the defendants' actions 'have caused the organization to divert resources to identify and counteract the defendants' unlawful practices,' and thereby impede and frustrate its core mission, which is, through 'education, counseling, advocacy, enforcement, and referral services to aid protected individuals.'

*Id.* at 487.

Here, Plaintiffs' complaint is devoid of any facts similar to those in *Equity Residential*. Plaintiffs' unsupported, vague assertions are insufficient to establish organizational standing. Accordingly, Plaintiff Shield will be dismissed from this action for lack of standing.

**2.   Immunity**

The gravamen of Ms. Huang's amended complaint is that Defendant engaged in "fraud on the court" by purportedly giving false testimony as a witness in the Planchek case. Maryland law provides witnesses with absolute immunity from suit based on their testimony during judicial proceedings. As recently explained by

the Court of Appeals of Maryland in *Offen v. Brenner*, 402 Md. 191, 199 (2007):

> "[I]t is of the greatest importance to the administration of justice that witnesses should go upon the stand with their minds absolutely free from apprehension that they may subject themselves to an action of slander for what they may say while giving their testimony . . . . 'The witness speaks . . . under the control of the court; is compelled to speak, with no right to decide what is immaterial; and he should not be subject to the possibility of an action for his words.'"
>
> [*Hunckel v. Voneiff*, 69 Md. 179, 187-88 14 A. 500 (1888)](internal citation omitted). Based on this justification, we provided absolute privilege for statements made by a witness in the course of judicial proceedings.

Defendant is absolutely immune from suit for statements made during the previous proceedings, even if the statements were intentionally false. "The privilege applies even when the witness publishing the defamatory statement does so maliciously, despite known falsity, or under otherwise unreasonable conduct." *Offen*, 402 Md. at 200 (citing *Reichardt v. Flynn*, 374 Md. 361, 367 (2003); *Schaub v. O'Ferrall*, 116 Md. 131, 138 (1911)).  On this basis alone, Ms. Huang's entire complaint fails.

    **3.  Maryland Consumer Protection Act/Breach of Contract**

Ms. Huang alleges in counts 7 and 8 that Defendant's "malicious actions of 'seeding' but not 'sodding' the property, violated [the] Maryland Consumer Protection Act, breached the

11

contract, and seriously damaged Ms. Huang even today." (Paper 6, ¶ 35). These claims are based solely on the alleged failure by Centex Homes to provide a "sodded" lawn as supposedly required under the contract. Ms. Huang's claims fail at the first step because there is no allegation that she entered a contractual relationship with Defendant. The sales contract was between Centex and Ms. Huang, not Defendant and Ms. Huang. (Paper 1 ¶ 8).

### 4. Conspiracy

To state a § 1985(3) claim, Plaintiffs must prove: "(1) a conspiracy of two or more persons (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *Simmons v. Poe*, 47 F.3d 1370, 1376-77 (4th Cir. 1995) (citing *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985); *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)); *see also Mears v. Town of Oxford, Md.*, 762 F.2d 368, 374 (4th Cir. 1985)(explaining that a plaintiff must show that a defendant's actions were motivated by race)(citations omitted).

Ms. Huang's amended complaint is devoid of any factual allegations regarding the existence of a conspiracy motivated by specific class-based, invidiously discriminatory animus. Indeed, Ms. Huang fails even to allege any agreement between Defendant,

Planchek, and/or Mr. Wilcher to engage in any overt act, much less any agreement to engage in discrimination.

    **5.**    **FHA**

The FHA, also known as Title VIII of the Civil Rights Act of 1968, prohibits public and private parties from engaging in certain discriminatory activities as part of ensuring "fair housing throughout the United States." 42 U.S.C. § 3601. Ms. Huang's FHA claim must fail because there is no allegation that Defendant refused to sell Ms. Huang a property or rejected her for a loan. Ms. Huang alleges that Defendant is merely a Centex employee and has not alleged any facts demonstrating that Defendant had any involvement with the sales contract for her home. As a result, Ms. Huang cannot state any claim under the FHA against Defendant.

**IV.**  **Conclusion**

For the foregoing reasons, Defendant's motion will be granted and Plaintiffs' motion will be denied. A separate Order will follow.

                                               /s/
                                   DEBORAH K. CHASANOW
                                   United States District Judge